**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

---

|  |  |  |
|---|---|---|
| | : | |
| LINCOLN HARBOR ENTERPRISES, LLC, | : | |
| | : | |
| Plaintiff, | : | **OPINION** |
| | : | |
| v. | : | Civ. No. 08-526 (WHW) |
| | : | |
| M.Y. DIPLOMAT, her engines, tackle, and | : | |
| apparel, <u>in rem</u>, J.D.J. MARINE, INC., | : | |
| DAVID SOMMERHALTER, JOSEPH TURI | : | |
| AND JEAN TURI, | : | |
| | : | |
| Defendants. | : | |
| | : | |

---

**<u>Walls, Senior District Judge</u>**

Plaintiff Lincoln Harbor Enterprises, LLC ("Plaintiff" or "Lincoln Harbor") moves for

default judgment, pursuant to Fed. R. Civ. P. 55(b), against M.Y. Diplomat, <u>in rem</u>, J.D.J.

Marine, Inc., David Sommerhalter, Joseph Turi and Jean Turi.  No opposition has been filed.

Pursuant to Fed. R. Civ. P. 78, the motion is decided without oral argument.  The motion is

denied as to M.Y. Diplomat and granted as to J.D.J. Marine, Inc., David Sommerhalter, and

Joseph Turi.

## FACTS AND PROCEDURAL HISTORY

Plaintiff Lincoln Harbor is a New Jersey limited liability corporation which operates a

commercial marina at 1500 Harbor Boulevard, Weehawken, New Jersey.  (Compl. ¶ 3.)

Defendant <u>in rem</u> M.Y. Diplomat ("Diplomat") is a vessel operated on the Hudson River and in

New York harbor.  (Compl. ¶ 4.)  Defendant J.D.J. Marine, Inc. ("JDJ Marine") owns, operates,

charters and/or manages the Vessel.  (Compl. ¶ 5.)  On July 1, 2006, Plaintiff entered into a

NOT FOR PUBLICATION

docking agreement ("Agreement") with JDJ Marine to provide dockage, wharfage, and berthing rights for the Diplomat from July 15, 2006 to July 14, 2008.  (Compl. ¶ 6.)  Defendants David Sommerhalter, Joseph Turi and Jean Turi[1] ("Individual Defendants") are signatories and personal guarantors to the Agreement.  (Compl. ¶ 6.)

Under the Agreements, Defendants agreed to pay an average rent of $4,500 per month for dockage and related services for the Diplomat.[2]  (Affidavit of Gerard Rokosz in Support of Motion for Default Judgment ("Rokosz Aff.") (No. 7-3)[3], ¶ 4, Ex. 1.)  Defendants began missing payments in October 2006 and ceased paying the monthly docking fees after the last payment on April 20, 2007.  (Id. ¶ 5.)  Shortly before July 2007, Defendants contacted Lincoln Harbor requesting that they be permitted to move the Diplomat to satisfy certain obligations owed to the United States Coast Guard.  (Id. ¶ 6.)  In exchange for allowing the Diplomat to sail, Plaintiffs obtained from Defendants a signed acknowledgment that defendants were in default of their obligations under the Agreement and that their outstanding debt at that time was $50,000.  (Id. ¶ 6, Ex. 3.)  Defendants have not made any docking fee payments since that time; the unpaid balance under the Agreement have accumulated to $89,900.  (Id. ¶ 7.)  Additionally, because the

---

[1]  On April 30, 2008, counsel for Jean Turi informed Plaintiff that Jean Turi filed a voluntary petition under Chapter 7 of the Bankruptcy Code.  (Affidavit of Kevin J. O'Donnell ("O'Donnell Aff."), ¶ 6 & Ex. C.)  Pursuant to 11 U.S.C. § 362, a voluntary petition operates as a stay of all judicial actions against the petitioner.  Therefore, all proceedings against Jean Turi, including this motion, are stayed.

[2]  The Agreement provides that the aggregate docking fees for the two-year contract period would be $108,000, payable in monthly installments equal to $5,000 for the months May through October and $4,000 for months November through April.  (Rokosz Aff., ¶ 2 & Ex. 1.)

[3]  "No. __" refers to the document number in the docket for this case.

NOT FOR PUBLICATION

Diplomat continues to be docked at Plaintiff's facilities, Plaintiff claims that the amount owed by

Defendants is much higher and increasing daily as Plaintiff is foregoing leasing income that it

could earn by leasing the slip occupied by the Diplomat to a paying customer.  (Id. ¶¶ 8-9.)

On January 29, 2008, Plaintiff filed this action against Defendants for breach of the

Agreement.  The Complaint states a prayer for damages in the amount of $85,000.00 plus

interest, costs and attorney's fees.  Defendants have not answered nor otherwise appeared in this

action.  On April 3, 2008, the Clerk of the Court entered default against all defendants.  The

Court earlier denied Plaintiff's first motion for default judgment because it failed to comply with

L. Civ. R. 7.1(d)(4), 7.1(e), and 7.2(a). (Order (No. 6).)  Plaintiff now brings this second motion

for default judgment.

LEGAL STANDARDS

Fed. R. Civ. P. 55(b)(2) governs a court's entry of default judgment.  The party against

whom default judgment is requested must have been properly served with process.  Fed. R. Civ.

P. 55(b)(2); Local Union No. 98, Int'l Bd. of Elec. Workers v. Cableco, Inc., No. 99-755, 1999

WL 269903, at *1 (E.D. Pa. Apr. 28, 1999).  Before default judgment may be entered by a court,

the moving party must have obtained an entry of default pursuant to Fed. R. Civ. P. 55(a).  See

10A Wright, et al., Federal Practice & Procecure: Civil § 2682 (3d ed. 1998).

A party seeking default judgment is not entitled to such relief as a matter of right, even

where the defendant was served with process and the default has been noted pursuant to Fed. R.

Civ. P. 55(a).  See, e.g., Cableco, 1999 WL 269903 at *1 (citing Petrucelli v. Bohringer &

Ratzinger, 46 F.3d 1298, 1303 (3d Cir. 1995)).  The district court has the discretion to enter

-3-

NOT FOR PUBLICATION

default judgment, although entry of default judgments is disfavored as decisions on the merits are preferred.  See Hritz v. Woma Corp., 732 F.2d 1178, 1181 (3d Cir. 1984). When considering a motion for default judgment, a court may consider the following factors: the potential amount of damages; whether issues of material fact or substantial public concern are implicated; whether the default is primarily technical; whether the moving party has been substantially prejudiced by the delay involved; whether the grounds for default are clearly established or in doubt; whether the default was attributable to good faith, mistake, or excusable neglect; and whether the court may later be obliged to set aside the default.  Franklin v. Nat'l Maritime Union of Am., No. 91-480, 1991 WL 131182, at *1 (D.N.J. July 16, 1991) (citing 10 Wright, et al., Federal Practice & Procedure § 2685 (2d ed. 1983)).

Although a court should accept as true the well-pleaded factual allegations of the complaint, it need not accept the moving party's legal conclusions or factual allegations relating to the amount of damages.  Comdyne I, Inc. v. Corbin, 908 F.2d 1142, 1149 (3d Cir. 1990) (citing 10 Wright, et al., Federal Practice & Procedure § 2688 (2d ed. 1983)).  Consequently, before granting a default judgment, a court must first ascertain whether "the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law." Directv, Inc. v. Asher, No. 03-1969, 2006 WL 680533, at *1 (D.N.J. Mar. 14, 2006) (citing 10A Wright, et al., Federal Practice & Procedure: Civil § 2688 (3d ed. 1998)). The Court must also "conduct its own inquiry 'in order to ascertain the amount of damages with reasonable certainty.'"  Int'l Assoc. of Heat & Frost Insulators v. S. Jersey Insulation Servs., No. 05-3143,

-4-

NOT FOR PUBLICATION

2007 WL 276137, at *1 (D.N.J. Jan. 26, 2007) (quoting In re Indus. Diamonds, 119 F. Supp. 2d 418, 420 (S.D.N.Y. 2000)).


### DISCUSSION

**1.      Motion for Default Judgment Against M.Y. Diplomat, <u>In Rem</u>**

This action arises from a contract providing dockage to a particular vessel which has long been held to be maritime.  See, e.g., <u>Ex parte Easton</u>, 95 U.S. 68, 78, 24 L. Ed. 373 (1877).  In count one, Plaintiff seeks relief against M.Y. Diplomat, <u>in rem</u>.  Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions ("Supplemental Rules") apply to actions <u>in rem</u> for admiralty and maritime claims.  See Fed. R. Civ. P. Supp. Rule A. Supplemental Rule C requires that in an action <u>in rem</u> the complaint must be verified.  See Fed. R. Civ. P. Supp. Rule C.  This Court's local rules set forth specific and detailed requirements for verification:

> Every complaint in Supplemental Rule B, C, and D actions shall be verified upon oath or solemn affirmation or in the form provided by 28 U.S.C. § 1746, by a party or by an authorized officer of a corporate party. If no party or authorized corporate officer is readily available, verification of a complaint may be made by an agent, attorney in fact, or attorney of record, who shall state the sources of the knowledge, information and belief contained in the complaint; declare that the document verified is true to the best of that knowledge, information, and belief; state why verification is not made by the party or an authorized corporate officer; and state that the affiant is authorized so to verify....

L. Civ. R. 9.2, LAMR (e)(3).

Plaintiff's Complaint is not verified pursuant to the Local Civil Rules.  Although the introductory paragraph of the Complaint contains the words, "Verified Complaint," (compl. at 1),

NOT FOR PUBLICATION

the Complaint falls well short of the prescribed requirements.  The Complaint is signed by

Plaintiff's attorney, Mr. Zonghetti, but fails to state why the verification is not made by the party

or an authorized corporate officer or state that the attorney is authorized to verify the complaint.

The Complaint neither states the sources of the knowledge, information, and belief nor declares

that the verified document is true to the best of that knowledge, information and belief.  In

addition, Plaintiff has failed to comply with service and notice requirements as provided in

Supplemental Rule C(3) and (C)(4).

Failure to properly file a verified complaint deprives the Court of jurisdiction over the res.

See United States v. $84,740.00 U.S. Currency, 900 F.2d 1402, 1405 (9th Cir.1990); see also

Pizani v. M/V Cotton Blossom, 669 F.2d 1084, 1090 (5th Cir.1982) ("Supplemental Rule C(2) of

the Federal Rules of Civil Procedure ... requires the filing of a verified complaint as a

prerequisite to obtaining in rem jurisdiction.").  It follows that this Court is without jurisdiction

to enter default judgment against the Diplomat.

Despite this result, Plaintiff's in rem action is not necessarily at an end.  The appropriate

procedure in this circumstance is to allow Plaintiff an opportunity to amend the Complaint to

comply with the relevant rules.  See $84,740.00 U.S. Currency, 900 F.2d at 1406; see also 29 D.

Norse & S. Gellert, Moore's Federal Practice ¶ 704.01 (2008) (complaint without verification

may be amended to cure the defect) (citing Joyce v. United States, 106 F. Supp. 719, 722 (D.N.J.

1952)).  Therefore, the Court denies the motion for judgment by default as to M.Y. Diplomat but

grants leave to amend the Complaint in accordance with the Supplemental Rules and L. Civ. R.

9.2.

NOT FOR PUBLICATION

    2.      **Motion for Default Judgment Against JDJ Marine, David Sommerhalter and Joseph Turi**

Before entering judgment by default against an absent party, district courts have an affirmative obligation to inquire as to whether the Court has jurisdiction over the subject matter and the absent defendants. See Williams v. Life Sav. & Loan, 802 F.2d 1200, 1203 (10th Cir.1986); see also Mwani v. Bin Laden, 417 F.3d 1, 6 (D.C. Cir. 2005); Tuli v. Republic of Iraq (In re Tuli), 172 F.3d 707, 712 (9th Cir. 1999); Dennis Garber & Assocs. v. Pack-Tech Int'l Corp., 115 F.3d 767, 772 (10th Cir. 1997); see also 10 J. Wm. Moore, et al., Moore's Federal Practice ¶ 55.37 (3d ed. 2008). A judgment rendered by a court that lacked subject matter jurisdiction or jurisdiction over the defendant is void. See Williams, 802 F.2d at 1203; see also Budget Blinds, Inc. v. White, 536 F.3d 244, 258 (3d Cir. 2008) (citing Marshall v. Bd. of Educ., 575 F.2d 417, 422 (3d Cir.1978)). Therefore, a threshold inquiry into whether the Court has subject matter jurisdiction and personal jurisdiction allows the Court to avoid entering a default judgment that will be set aside later.

The Court has subject matter jurisdiction over the present case pursuant to 28 U.S.C. § 1333(1) which confers original jurisdiction on federal district courts over any civil case of admiralty or maritime jurisdiction. A contract dispute falls within admiralty jurisdiction if the subject matter of the contract is maritime. See Weinstein v. Eastern Airlines, Inc., 316 F.2d 758 (3d Cir. 1963). As stated earlier, contracts providing dockage to a particular vessel, such as the Agreement at issue here, have long been held to be maritime. See, e.g., Ex parte Easton, 95 U.S.

**NOT FOR PUBLICATION**

at 78 (1877); <u>Goodman v. 26- Foot Trojan Vessel, Arkansas</u>, 859 F.2d 71 (8th Cir. 1988); <u>Royal Ins. Co. v. Pier 39 Ltd. Partnership</u>, 738 F.2d 1035, 1037 (9th Cir. 1984).

And there is little doubt that Court may exercise personal jurisdiction over JDJ Marine, David Sommerhalter, and Joseph Turi ("remaining defendants"). All defendants were personally served within the forum state. (Affs. of Serv. (Nos. 2, 4).) That fact alone would be enough to obtain jurisdiction over the defendants without regard to their states of residence according to Justice Scalia's plurality opinion joined by three Justices in <u>Burnham v. Superior Court</u>, 495 U.S. 604, 110 S. Ct. 2105 (1990). Justice Brennan joined by three Justices concurred in the judgment but disagreed that traditional rules of jurisdiction, such as the in-state service rule, comports with due process simply by virtue of its pedigree. <u>See</u> <u>Burnham</u>, 495 U.S. at 629, 110 S. Ct. at 2120.[4] Justice Brennan instead advocated undertaking an independent fairness inquiry into whether the defendant is knowingly and voluntarily in the State when served. <u>See</u> <u>id.</u> The record in this case establishes that the defendants were knowingly and voluntarily in the State when served.[5] The Agreement recites an Emerson, New Jersey address as that of JDJ Marine. (Rokosz Aff., Ex. 1.) All defendants signed a letter addressed to that same address in August 2007. (<u>Id.</u> Ex. 3) JDJ Marine was served at that location through David Sommerhalter, President of JDJ Marine. (Affs. of Serv. (No. 2).) Service was effected on Joseph Turi at his usual place of business in Emerson,

---

[4] Justice Stevens only concurred in the judgment and sided with neither plurality.

[5] There are no allegations in the Complaint with respect to the citizenship of the Individual Defendants. Plaintiff ambiguously alleges on information and belief that JDJ Marine is "incorporated under the laws of New Jersey <u>and/or</u> another state and does business in the State of New Jersey." (Compl. ¶ 5.) (emphasis added).

NOT FOR PUBLICATION

New Jersey by leaving a copy of the summons and the complaint with his co-tenant, Jean Turi.

(Aff. of Serv. (No. 4).)  Therefore, there is sufficient evidence to conclude that the defendants

were knowingly and voluntarily present in New Jersey - indeed, the evidence strongly suggests

that they are residents of New Jersey - when served.  Accordingly, the Court has personal

jurisdiction over the remaining defendants.

>           A.      Liability

The record indicates that default has been entered as to all defendants by the Clerk of the

Court.  As noted above, the remaining defendants were validly served with process.  The record

also indicates that the defendants were served with this motion for default judgment, via Federal

Express.  (Cert. of Serv. (No. 7-6).)  The Court finds that Defendants have had ample notice of

the Complaint and of the motion for default judgment and have chosen not to respond.

Accordingly, the Court will treat the allegations as to liability in the Complaint as true and

admitted by Defendants.

Plaintiff has pled four alternative theories of relief against the remaining defendants:

breach of contract against all defendants, quantum meruit against all defendants, book

account/account stated against all defendants, and breach of contract against the Individual

Defendants.[6]  Although allegations under each count vary slightly, all four claims for relief arise

from the same conduct or omission - defendants' failure to pay docking fees.  If the Court finds

that Plaintiff is entitled to prevail on one theory of recovery, the Court need not address other

---

[6] Plaintiff's first count is asserted in rem against M.Y. Diplomat.  Because the Court
lacks jurisdiction over the vessel, it will not consider that count in this motion.

**NOT FOR PUBLICATION**

mutually exclusive, alternative theories.  See Gagliardo v. Connaught Labs., Inc., 311 F.3d 565, 570 (3d Cir. 2002).  This is because "a plaintiff who presents a number of alternative legal theories, but whose recovery is limited to only one of them, has only a single claim."  Allegheny County Sanitary Auth. v. U.S.E.P.A., 732 F.2d 1167, 1172 (3d Cir. 1984).  This is true even where the alternative theory is contained in a separate claim or count.  Id. (separate counts considered to be one claim due to the counts having the same factual bases).

Plaintiff's allegations are factually and legally sufficient to support its breach of contract claims.  The elements of a breach of contract claim are:  A plaintiff must "show that the parties entered into a valid contract, that the defendant failed to perform his duties under the contract and that plaintiff sustained damages as a result." Murphy v. Implicito, 920 A.2d 678, 689 (N.J. Super. 2007).  On July 1, 2006, JDJ Marine and Plaintiff entered into a docking agreement.  Under Section 2 of the Agreement, JDJ Marine agreed to pay an aggregate docking fee of $108,000 for the two-year contract period, payable in monthly installments equal to $5,000 for the months May through October and $4,000 for months November through April.  (Compl. ¶¶ 6, 12-15, 28; Rokosz Aff., ¶ 2 & Ex. 1.)  The Individual Defendants jointly and severally provided Plaintiff a guarantee of JDJ Marine's obligations under the Agreement.  (Compl. ¶ 6, 25; Rokosz Aff., ¶ 2 & Ex. 1.)  According to the Complaint and affidavits submitted in support of this motion, Defendants have failed to perform these obligations under the Agreement by ceasing to pay the monthly docking fees after April 20, 2007 despite demands made by Plaintiff.  (Compl. ¶¶ 15, 28; Rokosz Aff., ¶ 2 & Ex. 2.)  Accordingly, Plaintiff has established grounds to impose liability on Defendants for breach of the Agreement.  Because the Court finds that Plaintiff has

**NOT FOR PUBLICATION**

established grounds to prevail on one theory of recovery, it will not address Plaintiff's other theories of recovery.

### B.   Damages

The only allegations in a complaint that are not treated as true upon consideration of a motion for default judgment are those pertaining to the amount of damages.  Comdyne, 908 F.2d at 1149.  Under Fed. R. Civ. P. 55(b)(2), a district court "may conduct such hearings or order such references as it deems necessary and proper" in order "to determine the amount of damages."  Id.

When damages are for a "sum certain or for a sum which can by computation be made certain," however, a further evidentiary inquiry is not necessary.  Fed. R. Civ. P. 55(b)(1); KPS & Assocs., Inc. v. Designs by FMC, Inc., 318 F.3d 1, 19 (1st Cir. 2003); Comdyne, 908 F.2d at 1149.  A claim for damages is a sum certain when "there is no doubt as to the amount to which a plaintiff is entitled as a result of the defendant's default."  KPS & Assocs., 318 F.3d at 19.  Sum certain situations include "actions on money judgments, negotiable instruments, or similar actions where the damages sought can be determined without resort to extrinsic proof."  Id. at 19-20.

Here, Plaintiff has pled damages in the amount of $85,000 plus interest, costs, and attorney fees.  (Compl. at 9.)  In affidavits in support of this motion, however, Plaintiff declares that Defendants owe $89,900 under the Agreement.  (Rokosz Aff. ¶ 7).  In addition, Plaintiff states that the amount owed by Defendants is continuing to increase as the Vessel remains docked at Plaintiff's marina.

NOT FOR PUBLICATION

Fed. R. Civ. P. 54(c) provides that a default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings.  The rationale for this provision is that the "defending party should be able to decide on the basis of the relief requested in the original pleading whether to expend the time, effort, and money necessary to defend in the action."  10A Wright, et al., Federal Practice & Procedure: Civil § 2663 (3d ed. 1999).  "Pleadings" are defined by Rule 7 as a complaint; a third-party complaint; answers to a complaint, a counterclaim, a crossclaim, third-party complaint; or a reply to an answer.  Fed. R. Civ. P. 7.  Plaintiff's demand for higher damages was contained in affidavits supporting this motion which are not pleadings as defined by Fed. R. Civ. P. 7.  Although amount of the damages now demanded by Plaintiff is amply supported by the evidence – the original contract price for the two-year docking agreement was $102,000 and Defendants have paid only $18,100 of their obligations to date, leaving $89,100 as the unpaid balance under the docking agreement – the clear language of the Rule 54(c) limits Plaintiff's recovery to the amount demanded in the Complaint.  Plaintiff may seek to recoup the difference by amending the Complaint as to M.Y. Diplomat and seeking relief against the vessel.

### C.      Interest, costs, and attorney fees

The Complaint also includes a demand for interest, costs, and attorney fees.  (Compl. at 9).  Although Plaintiff has not specified whether it seeks pre- or post-judgment interest, the Court will treat the demand for interest as seeking both pre-judgment interest and post-judgment interest.

Interest

NOT FOR PUBLICATION

Under New Jersey law, "the award of prejudgment interest for claims arising in contract is subject to the discretion of the trial court." Cooper Distrib. Co. v. Amana Refrigeration, Inc., 63 F.3d 262, 284 (3d Cir. 1995) (citing Meshinsky v. Nichols Yacht Sales, Inc., 110 N.J. 464, 478 (1988)).  Pre-judgment interest is awarded in order "to indemnify the claimant for the loss of what the moneys due him would presumably have earned if the payment had not been delayed." Id.  (quoting Ellmex Constr. Co. v. Republic Ins. Co. of Am., 202 N.J. Super. 195, 212-13 (App. Div. 1985)).  The "basic consideration" in awarding pre-judgment interest is "that the defendant has had the use, and the plaintiff has not, of the amount in question; and the interest factor simply covers the value of the sum awarded for the pre-judgment period during which the defendant had the benefit of money to which the plaintiff is found to have been earlier entitled."  County of Essex v. First Union Nat'l Bank, 186 N.J. 46, 61, 8941 A.2d 600 (2006).

Here, since Plaintiff has been denied use of its money, awarding pre-judgment interest is appropriate.  The remaining issue is at what rate the court will award pre-judgment interest.  N.J. Ct. R. 4:42-11(b) governs the rate of pre-judgment interest.[7]  As noted, New Jersey case law makes it clear that the rate at which pre-judgment interest is calculated for contract claims is within the discretion of the court.   Spencer v. Long Valley Inn, Inc., 2005 WL 3488033, at *6 (N.J. Super. Ct. App. Div. Dec. 22, 2005).  Absent unusual circumstances, however, trial courts should refer to N.J. Ct. R. 4:42-11(b) when determining the rate of pre-judgment interest to be awarded.  Benevenga v. Digregorio, 325 N.J. Super. 27, 35, 737 A.2d 696 (App. Div. 1999).

---

[7]  Although N.J. Ct. R. 4:42-11(b) addresses only tort judgments, the comments to the rule make clear that prejudgment interest may be awarded on contract claims in the court's discretion.  N.J. Ct. R. 4:42-11(b), cmt. 3.1.

NOT FOR PUBLICATION

Here, there are no unusual circumstances and the Court will award pre-judgment interest at the rate stipulated by N.J. Ct. R. 4:42-11(b).

N.J. Ct. R. 4:42-11(b) states, "the court shall . . . include in the judgment simple interest, calculated as hereafter provided, from the date of the institution of the action or from a date 6 months after the date the cause of action arises . . . in the same amount and manner provided for by paragraph (a)." N.J. Ct. R. 4:42-11(a)(iii) states that interest will be calculated "for judgment exceeding the monetary limit of the Special Civil Part . . . at a rate provided for in subparagraph (a)(ii) plus 2% annum." The judgment in this case exceeds the Special Civil Part monetary limit of $15,000.00, so 2% annum will be added to the "average rate of return . . . for the corresponding preceding fiscal year . . . of the State of New Jersey Cash Management Fund," N.J. Ct. R. 4:42-11(a)(ii). Accordingly, the interest rate to be awarded is 7.5% from the date of the inception of this action, January 29, 2008 to the current date. N.J. Ct. R. 4:42-11, Publisher's Note. Default judgment for pre-judgment interest on the damages arising from Defendant's breach of the Agreement is awarded in the amount of $5,155.74.[8] The Court also awards post-judgment interest to be calculated pursuant to N.J. Ct. R. 4:42-11(a)(i)-(iii).

Costs and Attorney's Fees

Fed. R. Civ. P. 54(d)(1) states "costs – other than attorney's fees – should be allowed to the prevailing party." The Court will allow Plaintiff to recover costs incurred in this action.

_____

[8] Interest is calculated as follows. For the year 2008 the interest rate is 7.5%. 7.5% of $85,000 is $6,375. That amount divided by 366 days in a year, equals the amount of interest due per diem, $17.42. The per diem is multiplied by 296 days, the number of days interest accrued, for total interest of $5,155.74.

NOT FOR PUBLICATION

While Fed. R. Civ. P. 54(d) does not automatically award attorney's fees to the prevailing party, the Rule provides a mechanism by which the prevailing party can recover them.  Fed. R. Civ. P. 54(d)(2) allows for the prevailing party to request attorney's fees by motion within fourteen days after the entry of judgment. The motion must specify the case law, statute, rule, or other ground entitling the movant to the award and state the amount of attorney's fees sought. Here, Plaintiff has not stated why they are entitled to attorney's fees.  Accordingly, the Court will not award Plaintiff attorney's fees at this time.  If Plaintiff wishes to be awarded attorney's fees, it should make a motion in accordance with Fed. R. Civ. P. 54(d)(2) following entry of default judgment.

## CONCLUSION

For the stated reasons, the Court denies the motion for default judgment as to the in rem defendant M.Y. Diplomat and grants the motion as to the remaining defendants.  Judgment is entered against J.D.J Marine, Inc., David Sommerhalter and Joseph Turi in the amount of $90,155.74 plus costs and post-judgment interest.


                                                    s/William H. Walls

                                                    United States Senior District Judge

**Appearances:**

Kevin J. O'Donnell
Kenny, Stearns & Zhonghetti
P.O. Box 508
Saddle River, NJ 07458

                    Attorney for Plaintiff Lincoln Harbor Enterprises, LLC

-15-